UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

XSEYER HOLDINGS CORP
D/B/A XSEYER RECORDS

       Plaintiff,

vs.

CAMERON LOUIS LAFOND AND
IAN WADILL

       Defendants.
_____/

## COMPLAINT

Plaintiff, XSEYER HOLDINGS CORP D/B/A XSEYER RECORDS (hereinafter "XSEYER"), by and through the undersigned counsel does hereby file suit against CAMERON LOUIS LAFOND ("LAFOND") and IAN WADILL ("WADILL") (collectively "Defendants") and in support thereof would say:

## OVERVIEW

1. This is a suit for: Breach of Contract; Declaratory Judgment regarding Defendants' continuing obligations under the terms of the contract; and Request for Temporary and Permanent Injunctive Relief, based on Defendant's failure to perform on the Contract. In the alternative, Plaintiff seeks relief under an unjust enrichment theory.

## THE PARTIES

2. Plaintiff, XSEYER is incorporated in the State of Nevada with a principal address in Broward County, Florida. Plaintiff conducts its business in the entertainment industry in Broward County, Florida.

3. Defendant, CAMERON LOUIS LAFOND (LAFOND) is a resident of Maryland, who is a professional recording artist.

4. Defendant, IAN WADILL (WADILL), is a resident of North Carolina, who is a professional recording artist.

## JURISDICTION & VENUE

5. This Court has jurisdiction pursuant to 28 USC 1332, based upon diversity of citizenship and since the amount in controversy exceeds the sum of Seventy Thousand ($75,000.00) Dollars, exclusive of interest and costs.

6. Venue and jurisdiction are appropriate in Broward County based upon the parties' consent as set forth in the Exclusive Recording and Artist Agreement attached hereto as **Exhibit "A"** (hereinafter referred to as the "Contract"), and because all of the causes of action described herein occurred in Broward County, Florida.

## COMMON ALLEGATIONS

7. On or about February 22, 2019, XSEYER and DEFENDANTS entered into the Contract.

8. Pursuant to the terms of the Contract, DEFENDANTS each pledged their exclusive services as a recording artist and composer to XSEYER for XSEYER's exclusive benefit and so that XSEYER would be protected as it invested money in Defendants, and entered into discussions with distribution companies for the recordings that were contemplated to be made under the terms of Contract.

9. In exchange for the exclusive services to be provided to XSEYER, Defendants granted XSEYER the exclusive ownership of all rights, title and interest throughout the universe in and to the results and proceeds of Defendants' services as

WOLFE LAW MIAMI
175 SW 7th Street · Suite 2410 · Miami, FL 33130 · T. 305.384.7370 · F: 305.384.7371

explained throughout the Contract.

10. During the term of the Contract, XSEYER expended a substantial amount of time and in excess of $250,000.00, to develop Defendants as an artist, as part of a Band to be called EXET7, to record music and promote Defendants on social media and to various distributors.

11. During the term of the Contract, XSEYER expended a substantial amount of time and money to assist DEFENDANTS in complying with their recording commitment under the Contract, including paying for Defendants' studio time, living expenses, and traveling expenses.

12. On or about early 2019, XSEYER was made aware that DEFENDANTS were then refusing to abide by the recording and performance scheduling, and their unwillingness to rehearse and prepare their live performance in a professional manner. Then XSEYER learned of Defendants' intention to breach the Contract, by offering their services to companies other than to XSEYER.

13. On or about May 31, 2019, Defendant WADILL published on his social media that he had left EXET7 (in violation of the Contract) and was "with another band". Both Defendants made it clear to XSEYER and to the remaining members of EXET7, that they would no longer comply with their obligations under the terms of the Contract.

14. In furtherance of the intent of the Contract XSEYER:

   a. Incurred the costs of making recordings at a high end recording studio;

   b. Incurred the costs of producing multiple promotional videos;

   c. Developed a social media campaign;

   d. Arranged for the Defendants and other members of the band, EXET7 to

          have a promotional tour of more than 20 cities;

    e. Arranged for the band to travel to New York to audition for and ultimately, to sign a lucrative distribution contract with BFD, (a division of Bob Frank Entertainment Group Inc.) a recording label in New York distributed by Sony.

15. At no time did DEFENDANTS properly (and in accordance with the provision of the Contract) serve notice to XSEYER of XSEYER's breach or of DEFENDANTS' intent to terminate the Contract.

16. DEFENDANTS do not have the right to terminate or rescind the Contract without cause and without returning the consideration given to DEFENDANTS by XSEYER (which they have not done).

17. XSEYER has not breached the Contract.

18. DEFENDANTS has not informed XSEYER of any specific breach of the Contract or provided XSEYER with sixty (60) days to cure such purported (and currently unspecified) breach, as mandated by the Contract.

19. DEFENDANTS' breach of the Contract prevents XSEYER from being able to profit off of the sound recordings, recoup advances, merchandise, live performances, and concerts, as contemplated by the Contract. Hence, XSEYER must remove Defendants' name, likeness and voice from recordings and video previously made and replace same by another artist in order to mitigate it's damages.

20. Further DEFENDANTS have not reimbursed XSEYER for its out-of-pocket costs and other consideration given to DEFENDANTS by XSEYER.

21. In all respects, XSEYER has complied with its obligations under the terms

of the Contract.

22. On May 29, 2019 XSEYER placed Defendants on suspension as set forth on the Letters attached hereto as composite **Exhibit "B"**.

23. All conditions precedent to the filing of this action have occurred or have been waived.

24. On or about June, 2019, DEFENDANTS expressed to XSEYER that they each refused to comply with their continuing obligations to XSEYER under the terms of the Contract.

25. Upon information and belief, DEFENDANTS have either recorded new recordings, rendered their services as artists and/or written new compositions in direct violation of DEFENDANTS' obligations to XSEYER under the terms of the Contract.

26. Upon information and belief, the recordings made by DEFENDANTS will exploit compositions (written by DEFENDANTS) which, pursuant to the Contract, is owned by XSEYER, without XSEYER's permission.

## COUNT I - BREACH OF CONTRACT
### (vs. WADILL)

XSEYER readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

27. This is a count for breach of the Contract by WADILL.

28. XSEYER performed all of its obligations under the terms of the Contract.

29. WADILL breached his obligations under the Contract and he stated that he would not in the future perform his obligations under the Contract by wrongfully attempting to terminate the Contract without cause, without providing XSEYER proper notice and without giving XSEYER proper time to cure any breach committed by

5

XSEYER, by refusing perform his obligations under the express and implied provisions of the Contract by failing to appear for recording sessions, rehearsals and performances by stating that he would not appear for future performances by recording for other parties and by acting against the best interest of the band.

30. WADILL further breached the Contract by engaging with third parties to perform the services that were exclusively granted to XSEYER under the terms of the Contract.

31. As a result of WADILL's breaches of the Contract, XSEYER has been damaged in that XSEYER will have to replace his name, image and performances from promotional material, recording and videos produced and paid for by the XSEYER.

**WHEREFORE**, for the reasons set forth herein, XSEYER requests this Court to award compensatory damages, consequential damages and business losses in its favor and against WADILL, as a proximate result of WADILL'S failure to fulfill his obligations under the Contract, and such further relief this Court deems to be just and fair.

## COUNT II - BREACH OF CONTRACT
### (vs. LAFOND)

XSEYER readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

32. This is a count for breach of the Contract by LAFOND.

33. XSEYER performed all of its obligations under the terms of the Contract.

34. LAFOND breached his obligations under the Contract and he stated that he would not in the future perform his obligations under the Contract by wrongfully attempting to terminate the Contract without cause, without providing XSEYER proper

notice and without giving XSEYER proper time to cure any breach committed by XSEYER, by refusing perform his obligations under the express and implied provisions of the Contract by failing to appear for recording sessions, rehearsals and performances by stating that he would not appear for future performances by recording for other parties and by acting against the best interest of the band.

35. LAFOND further breached the Contract by engaging with third parties to perform the services that were exclusively granted to XSEYER under the terms of the Contract.

36. As a result of LAFOND's breaches of the Contract, XSEYER has been damaged in that XSEYER will have to replace his name, image and performances from promotional material, recording and videos produced and paid for by the XSEYER.

**WHEREFORE**, for the reasons set forth herein, XSEYER requests this Court to award compensatory damages, consequential damages and business losses in its favor and against LAFOND, as a proximate result of LAFOND' failure to fulfill his obligations under the Contract, and such further relief this Court deems to be just and fair.

### COUNT III- DECLARATORY JUDGMENT REGARDING DEFENDANTS' CONTINUING OBLIGATIONS UNDER THE TERMS OF THE CONTRACT
### (vs. WADILL)

Plaintiff, readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

37. This is a count for declaratory relief pursuant to Florida Statute Chapter 86 *et seq* against WADILL.

38. XSEYER and WADILL have an actual present, adverse and antagonistic interest in the subject matter of this action.

7

39. The antagonistic and adverse interest is all before the Court by proper process, and the relief sought is not for legal advice by the Court, nor to answer questions propounded from curiosity.

40. XSEYER intends to successfully to exploit the compositions made by WADILL under the terms of the Contract through the end of the term, so that XSEYER can recoup its investment and earn a profit. WADILL has demonstrated an inability and he has stated his unwillingness to fulfill his obligations under the Contract. Specifically, WADILL appears unwilling to be bound by any provisions that stipulate DEFENDANTS' exclusive services as a recording artist and composer to XSEYER.

41. Plaintiff would like to continue to work with WADILL to provide exclusive services in connection with WADILL's profession as a recording artist and as a composer; however, XSEYER cannot do so because WADILL has failed to perform his obligations and respect of his duties under the terms of the Contract.

42. XSEYER requests that this Court declare that WADILL: 1) continues to be bound by the Contract; 2) is obligated to perform exclusively for XSEYER on the promises he made upon execution of same; 3) is prohibited from entering into any third-party contracts contemplating his services as a recording artist and/or composer; 4) may not enter into any agreement with a distributor without XSEYER's approval of the negotiations concerning same; and 5) WADILL cannot enter into a license agreement or sale agreement regarding any of his compositions because they are owned by XSEYER.

43. Since XSEYER is uncertain as to WADILL's continuing obligations to XSEYER, and XSEYER's continuing obligations to WADILL, and since WADILL has refused to reimburse XSEYER for out-of-pocket expenses in addition to making it clear

that WADILL does not intend to pay XSEYER any fees pursuant to the terms of the Contract, there is an actual controversy. Plaintiff has no adequate remedy at law.

**WHEREFORE**, for the reasons set forth herein, XSEYER requests that this Court enter an Order that the Contract is valid and in-effect, and that WADILL continues to owe XSEYER his exclusive services as a recording artist and composer, and that XSEYER is the owner of all compositions written by WADILL pursuant to the terms of the Contract.

### COUNT IV- DECLARATORY JUDGMENT REGARDING DEFENDANTS' CONTINUING OBLIGATIONS UNDER THE TERMS OF THE CONTRACT
### (vs. LAFOND)

Plaintiff, readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

44. This is a count for declaratory relief pursuant to Florida Statute Chapter 86 *et seq* against LAFOND.

45. XSEYER and LAFOND have an actual present, adverse and antagonistic interest in the subject matter of this action.

46. The antagonistic and adverse interest is all before the Court by proper process, and the relief sought is not for legal advice by the Court, nor to answer questions propounded from curiosity.

47. XSEYER intends to exploit the compositions made by LAFOND under the terms of the Contract through the end of the term, so that XSEYER can recoup its investment and earn a profit. LAFOND has demonstrated an inability and he has stated his unwillingness to fulfill his obligations under the Contract. Specifically, LAFOND appears unwilling to be bound by any provisions that stipulate LAFOND's exclusive

9

services as a recording artist and composer to XSEYER.

48. Plaintiff would like to continue to work with LAFOND to provide exclusive services in connection with LAFOND's profession as a recording artist and as a composer; however, XSEYER cannot do so because LAFOND has failed to perform his obligations and respect of his duties under the terms of the Contract.

49. XSEYER requests that this Court declare that LAFOND: 1) continues to be bound by the Contract; 2) is obligated to perform exclusively for XSEYER on the promises he made upon execution of same; 3) is prohibited from entering into any third-party contracts contemplating his services as a recording artist and/or composer; 4) may not enter into any agreement with a distributor without XSEYER's approval of the negotiations concerning same; and 5) LAFOND cannot enter in a licensing or sale agreement regarding any of his compositions because they are owned by XSEYER.

50. Since XSEYER is uncertain as to LAFOND's continuing obligations to XSEYER, and XSEYER's continuing obligations to LAFOND, and since LAFOND has refused to reimburse XSEYER for out-of-pocket expenses in addition to making it clear that LAFOND does not intend to pay XSEYER any fees pursuant to the terms of the Contract, there is an actual controversy.  Plaintiff has no adequate remedy at law.

**WHEREFORE**, for the reasons set forth herein, XSEYER requests that this Court enter an Order that the Contract is valid and in-effect, and that LAFOND continues to owe XSEYER his exclusive services as a recording artist and composer, and that XSEYER is the owner of all compositions written by LAFOND pursuant to the terms of the Contract.

## COUNT V-REQUEST FOR TEMPORARY
## AND PERMANENT INJUNCTIVE RELIEF
## (VS. WADILL)

XSEYER readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

51. This is a count for temporary and permanent injunctive relief to prevent WADILL from working with any company in the entertainment and music industry until WADILL agrees to comply with and fully performs with the Contract, and to prevent WADILL from placing or licensing any composition owned by XSEYER with any third-party.

52. WADILL is bound by an enforceable Contract between XSEYER and WADILL. XSEYER has incurred costs based on providing recording artist-related services to WADILL. XSEYER has attempted to enforce the Contract, and WADILL has refused to perform on the promises he made per the Contract.

53. Pursuant to the Contract, WADILL and XSEYER agreed that an injunction is one of the appropriate remedies as a result of WADILL's breach.

54. As a result of WADILL's actions as described herein, XSEYER has been irreparably harmed and will indefinitely be unable to profit off of WADILL's monetary success in the entertainment industry, including but not limited by way of any distribution agreements that WADILL's enters into in the future.

55. XSEYER has no adequate remedy at law because monetary relief will not adequately compensate Plaintiff for it's lack of credit and other benefits that having a successful artist within it's company would actually provide.

**WOLFE LAW MIAMI**
**175 SW 7th Street · Suite 2410 · Miami, FL 33130 · T. 305.384.7370 · F: 305.384.7371**

56. A temporary and permanent injunction will serve the public interests to prevent WADILL from entering into any entertainment industry contract in violation of the Contract.

**WHEREFORE**, for the reasons set for the herein, XSEYER asks this Honorable Court to enter a temporary and permanent injunction restraining and preventing WADILL from granting his recording services, name, image and likeness and/or compositions to a third-party in the entertainment and music industries, until WADILL complies with the terms of the Contract and grants such further relief as may be fair and just.

## COUNT VI-REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF (VS. LAFOND)

XSEYER readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

57. This is a count for temporary and permanent injunctive relief to prevent LAFOND from working with any company in the entertainment and music industry until LAFOND agrees to comply with and fully performs and to prevent LAFOND from placing any composition owned by XSEYER with any third-party.

58. LAFOND is bound by an enforceable Contract between XSEYER and LAFOND. XSEYER has incurred costs based on providing recording artist-related services to LAFOND. XSEYER has attempted to enforce the Contract, and LAFOND has refused to perform on the promises he made per the Contract.

59. Pursuant to the Contract, LAFOND and XSEYER agreed that an injunction is one of the appropriate remedies as a result of LAFOND's breach.

60. As a result of LAFOND's actions as described herein, XSEYER has been irreparably harmed and will indefinitely be unable to profit off of LAFOND's monetary success in the entertainment industry, including but not limited by way of any distribution agreements that LAFOND enters into in the future.

61. XSEYER has no adequate remedy at law because monetary relief will not adequately compensate Plaintiff for it's lack of credit and other benefits that having a successful artist within it's company would actually provide.

62. A temporary and permanent injunction will serve the public interests to prevent LAFOND from entering into any entertainment industry contract in violation of the Contract.

**WHEREFORE**, for the reasons set for the herein, XSEYER asks this Honorable Court to enter a temporary and permanent injunction restraining and preventing LAFOND from granting his recording services, name, image and likeness and/or his compositions to a third-party in the entertainment and music industries, until LAFOND complies with the terms of the Contract and grants such further relief as may be fair and just.

## COUNT VII-UNJUST ENRICHMENT
### (vs. WADILL )

XSEYER readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

63. This is a count for unjust enrichment, pled in the alternative to the count for breach of contract.

64. XSEYER presented WADILL to record companies and attempted to obtain distribution agreements through negotiations for WADILL's benefit.

**WOLFE LAW MIAMI**
175 SW 7th Street · Suite 2410 · Miami, FL 33130 · T. 305.384.7370 · F: 305.384.7371

65. XSEYER financially backed WADILL to produce recordings required under Recording Commitment provision of the Contract, for WADILL benefit.

66. WADILL knew of the benefits that resulted from XSEYER's efforts.

67. WADILL accepted the benefits that followed from XSEYER's efforts.

68. It would be inequitable for the WADILL to retain such benefits without providing fair compensation.

WHEREFORE, for the reasons set forth herein, XSEYER requests that this Court find a contract implied in law and award an appropriate remedy against WADILL and in the Plaintiff's favor and against WADILL for being unjustly enriched.

## COUNT VIII-UNJUST ENRICHMENT
### (vs. LAFOND)

XSEYER readopts and realleges the allegations contained in paragraph 1 through 26 as if fully stated herein and further alleges:

69. This is a count for unjust enrichment pled in the alternative to the count for breach of contract.

70. XSEYER presented LAFOND to record companies and attempted to obtain distribution agreements through negotiations for LAFOND's benefit.

71. XSEYER financially backed LAFOND to produce recordings required under Recording Commitment provision of the Contract, for LAFOND benefit.

72. LAFOND knew of the benefits that resulted from XSEYER's efforts.

73. LAFOND accepted the benefits that followed from XSEYER's efforts.

74. It would be inequitable for the LAFOND to retain such benefits without providing fair compensation.

WOLFE LAW MIAMI
175 SW 7th Street · Suite 2410 · Miami, FL 33130 · T. 305.384.7370 · F: 305.384.7371

WHEREFORE, for the reasons set forth herein, XSEYER requests that this Court find a contract implied in law and award an appropriate remedy against LAFOND and in the Plaintiff's favor and against LAFOND for being unjustly enriched.

Respectfully submitted, this 2nd day of July 2019, by:

**WOLFE LAW MIAMI, P.A.**
*Attorneys for Plaintiff*
175 SW 7th Street, Suite 2410
Miami, FL 33130
Phone: 305.384.7370
Fax: 305.384.7371

By: *[signature]*

RICHARD C. WOLFE
Florida Bar No.: 355607
rwolfe@wolfelawmiami.com